## EMERALD OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 1035.

Circuit Court of Appeals, Tenth Circuit.
Sept. 5, 1934.

682

A. U. Miner, of Salt Lake City, Utah (D. A. Skeen, of Salt Lake City, Utah, on the brief), for petitioner.

Wm. B. Waldo, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes of the Emerald Company for the years 1923 to 1925, and 1927 to 1929, inclusive.

The Emerald Company is a Utah corporation with its principal office and place of business at Vernal in that state. Prior to 1913 it acquired about 2,800 acres of oil lands in the Rangeley Field located in the Uintah Basin, which is 50 miles from Vernal and about 125 miles from railroad facilities. By March 1, 1913, the Emerald Company had drilled 11 or 12 wells thereon, which were each producing an average of ten barrels of oil a day. The Rangeley Field is a shallow field. The producing sand is found at depths varying from 400 to 500 feet. The average life of the wells had been about four years. The first refinery in the Uintah Basin was constructed in 1918. But the oil is of a high gravity and prior to that date it was disposed of at the local market, where the price of gasoline was fifty cents a gallon, for use in tractors, stationary gasoline engines, and automobiles, and also for fuel.

On June 27, 1924, the Emerald Company entered into a lease of its lands for a term of five years, and so long thereafter as oil or gas should be produced therefrom, to the Texas Production Company. Under the lease the Texas Company agreed to pay the Emerald Company a cash bonus of $25,000 and certain stipulated cash royalties, in addition to a percentage of the production.

In reporting its income for 1923 and 1924 the Emerald Company claimed deductions for depletion of $7,625 and $13,940, respectively. These amounts were disallowed by the Commissioner. For 1925, 1927, 1928, and 1929 it claimed deductions for depletion of $9,000, $4,996.69, $9,996.69, and $19,653.94, respectively. The Commissioner reduced these amounts to $4,125, $4,655.85, $4,207.19, and $6,189.56, and proposed additional assessments.

The Emerald Company filed petitions with the Board of Tax Appeals for a redetermination of its tax liability for the above years. It asserted that the oil lands had a fair market value of $250,000 on March 1, 1913, that depletion should have been allowed on that basis, and that the bonus of $25,000 received in 1924 should have been treated as a return of capital.

The Board found that the fair market value of the oil lands on March 1, 1913, was $150,000 and that the Emerald Company was entitled to depletion allowances for the years 1923 and 1924 under the provisions of section 234 (a) (9) of the Revenue Act of 1921 (42 Stat. 256) and section 234 (a) (8) of the Revenue Act of 1924 (43 Stat. 284 [26 USCA § 986 (a) (8)]), based upon that figure. Its decision for those years was entered under Rule 50, which requires that a computation be made by the parties and submitted to the Board. Both parties submitted computations. They were in agreement with respect to depletion allowances on the oil actually produced in 1923 and 1924, but were in disagreement as to the amount of depletion to be allowed on the bonus payment of $25,000. The Board rejected the figures of both parties on that item. In its memorandum decision, it said:

"Said depletion deduction on this bonus payment should be computed in accordance with Article 216, Regulations 69, approved by the court in Murphy Oil Company v. Burnet (C. C. A.) 55 F.(2d) 17, affirmed by the Supreme Court, Murphy Oil Company v. David Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318, on December 5, 1932. * * *

"Said depletion deduction on said bonus payment when computed in accordance with the article of the Commissioner's Regulations above set out, amounts to $6,890.43 instead of $6,185.36 as used by the respondent in his computation and $21,402.50 as used by petitioner in its computation."

The deficiencies proposed by the Commissioner for 1925, 1927, 1928, and 1929 were affirmed.

The Board in its memorandum opinion set out the facts upon which its decision was based, but did not make separate findings of fact. This is assigned as error. Under section 907 (b) of the Revenue Act of 1924, as added by Revenue Act 1926, § 1000 (26 USCA § 1219 note), the Board was required to make findings of fact. Kendrick Coal & Dock Co. v. Commissioner (C. C. A. 8) 29 F.(2d) 559.

But section 601 of the Revenue Act of 1928 (45 Stat. 871, 872 [26 USCA § 1219]) reads in part as follows:

"Sections 906 and 907 (a) and (b) of the Revenue Act of 1924, as amended, are further amended to read as follows:

"'Sec. 907 * * * (b) It shall be the duty of the Board and of each division to include in its report upon any proceeding its findings of fact or opinion or memorandum opinion. The Board shall report in writing all its findings of fact, opinions and memorandum opinions.'"

By the use of the disjunctive "or," Congress manifested the intention to leave it optional with the Board to make its report in the form of special findings, an opinion, or a memorandum opinion. See House Reports, Vol. 1, No. 2, p. 30, 70th Congress, First Session. Under section 907 (b) as amended a written opinion may perform the function of a finding of fact, and we may look to it to determine what the decision is and the facts upon which it is based. Olson v. Commissioner (C. C. A. 7) 67 F.(2d) 726; Insurance & Title Guarantee Co. v. Commissioner (C. C. A. 2) 36 F.(2d) 842; Commissioner v. Crescent Leather Co. (C. C. A. 1) 40 F.(2d) 833, 834; California Iron Yards Co. v. Commissioner (C. C. A. 9) 47 F.(2d) 514, 518; Sheppard & Myers, Inc., v. Commissioner (C. C. A. 3) 45 F.(2d) 50, 51.

The Emerald Company claims that the Board erred in finding that its oil properties had a fair market value of $150,000 on March 1, 1913. Value is a question of fact, and the Board's finding thereof will be sustained if supported by substantial evidence. Gloyd v. Commissioner (C. C. A. 8) 63 F.(2d) 649; Denver Live Stock Com. Co. v. Commissioner (C. C. A. 8) 29 F.(2d) 543; Folk v. Commissioner (C. C. A. 10) 67 F.(2d) 779; Tracy v. Commissioner (C. C. A. 6) 53 F.(2d) 575.

The Board had before it the evidence with respect to the location and structure of the field, the number, average production and probable life of the wells located therein, market conditions and transportation facilities, and the sums invested therein. This evidence, in our opinion, affords a substantial basis for the Board's finding of value.

The Emerald Company complains that the Board disregarded the testimony of several witnesses of offers to purchase the property, received during 1912 to 1914, at prices ranging from $200,000 to $250,000; and the testimony of an expert that the properties had a fair market value of $250,000 on March 1, 1913.

In Sharp v. United States, 191 U. S. 341, 348, 24 S. Ct. 114, 115, 48 L. Ed. 211, the Supreme Court said:

"It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. * * * There is no opportunity to cross-examine the person making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy, and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings."

See, also, Clarke v. Hot Springs Elec. L. & P. Co. (C. C. A. 10) 55 F.(2d) 612; Sommers v. Commissioner (C. C. A. 10) 63 F.(2d) 551.

The opinion of the expert as to value is not binding upon the Board. A fact-finding body may disregard the opinion of an expert and use its own judgment in arriving at value. Wyoming Inv. Co. v. Commissioner (C. C. A. 10) 70 F.(2d) 191, 193; Folk v. Commissioner, supra; Tracy v. Commissioner, supra; Gloyd v. Commissioner, supra; Uncasville Mfg. Co. v. Commissioner (C. C. A. 2) 55 F.(2d) 893, 897; Anchor Co. v. Commissioner (C. C. A. 4) 42 F.(2d) 99. It may not reject opinion evidence and make an arbitrary finding of value based on mere conjecture and unsupported by any substantial evidence. Gloyd v. Commissioner, supra. But the Board did not do that. As we have previously shown, its finding was based upon substantial evidence. We conclude that the depletion allowances for 1923 and 1924, computed on a March 1, 1913, value of $150,000, should be sustained.

The Emerald Company contends that in determining the proper depletion allowance to be deducted from the $25,000 bonus, it was necessary to take into consideration future royalties; that because of the terms of the lease and the location of the properties it was not possible to determine such future royalties, and therefore the whole of such bonus should have been treated as a return of capital.

Future royalties from oil properties cannot be determined with accuracy. At best they can only be estimated. We see nothing in the terms of the lease or the situation of the properties that prevented a reasonably accurate estimate from being made in the instant case. The cash bonus was taxable as income after the proper depletion allowance was deducted therefrom (Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318); and the record does not disclose that future royalties were not fairly estimated and considered in computing such depletion allowance.

For the years 1925, 1927, 1928, and 1929 the Commissioner computed depletion under the provisions of section 204 (c) (2) of the Revenue Act of 1926, 26 USCA § 935 (c) (2) and section 114 (b) (3) of the Revenue Act of 1928 (26 USCA § 2114 (b) (3). See Note 1.[1]

The Emerald Company contends that since it furnished the same information for the above years as it did for 1923 and 1924, and since section 204 (c) (2), supra, provides "that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph," the Commissioner and the Board were in error in limiting it to 27½% for those years.

The determination of the Commissioner was prima facie correct, and the burden was on the taxpayer to overcome it. Walls v. Commissioner (C. C. A. 10) 60 F.(2d) 347; Wyoming Investment Company v. Commissioner (C. C. A. 10) 70 F.(2d) 191; O'Meara v. Commissioner (C. C. A. 10) 34 F.(2d) 390. The record does not disclose that a computation on any other basis would have resulted in a larger depletion allowance.

Finally, the Emerald Company asserts that the Board erred in denying its petition for rehearing. The absence of this motion from the record precludes a consideration of this assignment.

Affirmed.

---

Section 204 (c) (2), supra (44 Stat. 16 [26 USCA § 935 (c) (2)]), reads as follows:

"In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

Section 114 (b) (3), supra (45 Stat. 821 [26 USCA § 2114 (b) (3)]), is substantially the same as the above.